IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) No. 19-cv-5208 |
| v. | ) ) Judge John J. Tharp, Jr. |
| CANAL INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this dispute between insurers, James River Insurance Company ("James River") seeks reimbursement of defense and indemnity costs from Canal Insurance Company ("Canal") incurred in an underlying case against their shared insured, Cardinal Transport. Specifically, James River seeks recovery on the basis of contractual subrogation and estoppel. Canal has moved to dismiss James River's claim in its entirety, arguing that neither theory applies to this action. For the reasons discussed below, Canal's motion to dismiss is granted without prejudice.

### BACKGROUND[1]

**A. Underlying Lawsuit**

This case arises from an underlying federal lawsuit in West Virginia, *Edwards v. McElliots Trucking LLC*, No. 3:16-1879, 2018 WL 6531680 (S.D. W. Va. Dec. 11, 2018). Compl. ¶ 2, ECF No. 15.[2] In *Edwards*, the plaintiff sued for damages following an October 3, 2015 incident in which

---

[1] For the purposes of this motion, the court accepts all of the plaintiffs' factual allegations as true and draws all reasonable inferences in their favor.

[2] The amended complaint, filed on October 22, 2019, is the operative one for purposes of the motion to dismiss and is referred to as "Complaint" throughout.

his foot was crushed while loading metal pipe onto a truck. *Id.* ¶¶ 9, 12. The plaintiff was assisting in the loading process, as another individual used a forklift to lift the pipe from the ground and place it on the truck. *Id.* ¶¶ 10-11. Before the plaintiff could remove the strap connecting the pipe to the forklift, the forklift reversed, pulling the pipe off the truck and causing it to fall on to the plaintiff's foot. *Id.* ¶ 12. Cardinal Transport leased and operated the truck in question. *Id.* ¶ 9. Following the jury trial, the court entered judgment against Cardinal Transport in the amount of $5.4 million. *Id.* ¶ 17. The defendants appealed to the Fourth Circuit, which affirmed the district court's judgment in June 2020. *Edwards v. Cardinal Transport, Inc.*, 821 Fed. Appx. 167, 176 (4th Cir. 2020).

### B. Defense of Cardinal Transport

At the time of the incident, Cardinal Transport had two insurance policies in place: Canal's "Business Auto Insurance Policy," No. PIA07664202, and James River's "General Commercial Liability Insurance Policy," No. 00065770-0. Compl. ¶¶ 18, 24. Both policies provide coverage of up to $1 million per occurrence. *Id.* ¶¶ 21, 25. Following the filing of the complaint in the underlying lawsuit, Cardinal Transport tendered its defense to Canal. Resp. at 2, ECF No. 18.

On April 1, 2016, Canal agreed to defend Cardinal Transport in the underlying lawsuit under a reservation of rights and hired the law firm of Ansbach Meeks and Ellenberger to do so. Compl. ¶¶ 28, 29. James River also defended Cardinal Transport, hiring the firm of Flaherty Sensabaugh & Bonasso. *Id.* ¶ 30. On April 13, 2016, Canal informed Cardinal Transport that the Canal attorneys would "step back and assume a monitoring role while [one of the James River attorneys] serves as lead counsel." *Id.* ¶ 31. The Canal attorneys attended court proceedings and depositions, but refrained from taking or defending any depositions, drafting substantive motions, or assisting with the run-up to trial. *Id.* ¶ 32. Two weeks before the start of trial, on October 5,

2017, Canal sent a letter to James River's lead defense attorney and Cardinal Transport, stating that its policy did not cover Cardinal Transport in the incident and that it would not pay out any sums on its behalf. *Id.* ¶ 35. Canal has not taken an active defense role in the trial or appeal in the time since. *Id.* ¶ 32.

On August 1, 2019, James River filed this suit against Canal, seeking reimbursement of defense costs and indemnity obligations in the underlying lawsuit. ECF No. 1. Jurisdiction is secure because James River is incorporated and operates its principal place of business in Virginia, while Canal is incorporated in South Carolina and operates its principal place of business there. Compl. ¶¶ 3, 4. The amount in controversy exceeds the jurisdictional threshold as James River seeks to recover $700,000 in defense costs and indemnity obligations in the $5.4 million judgment. *Id.* ¶ 5. Further, Illinois law governs because both insurance policies stipulate that Illinois law controls coverage, rights, and duties.[3] *Id.* ¶¶ 23, 27. Canal has moved to dismiss the claim against it, arguing that neither contractual subrogation nor estoppel provides James River with a cognizable cause of action. ECF No. 17. The Court addresses these arguments in turn.

## DISCUSSION

### I. Subrogation

The premise of James River's subrogation claim is that Canal is liable to Cardinal Transport for its costs of defense and the judgment (or some portion of that judgment) awarded to the plaintiff in the *Edwards* case. The threshold question that must be addressed is therefore: what right does James River have to assert claims of Cardinal Transport?[4] The answer, according to

---

[3] Venue and the choice of Illinois law are explained by the fact that Cardinal Transport's headquarters is located in Coal City, Illinois.

[4] This is the first question to be addressed, in the Court's view, because unless James River is a subrogee of Cardinal Transport, it has no right to pursue a claim by asserting Cardinal Transport's rights against Canal. Addressing the claims in the reverse order (estoppel first, then

3

James River, is that it is subrogated to Cardinal Transport's claims against Canal. Subrogation, in this context, is defined as the substitution of an insurer in place of the insured to recover funds from a third party. 16 COUCH ON INS. 3d § 222.5; *see also Century Indemnity Co. v. Am. Home Assurance*, 2017 IL App (1st) 163311-U ¶ 16, 2017 WL 5983716 (defining subrogation as a broad doctrine in which one "pays a debt for which another is primarily liable and in which in equity and good conscience should have been discharged by that latter"). Put differently, subrogation allows the insurer to step into the insured's shoes to seek recovery of payments made to the insured from a third party.[5] Insurers may pursue equitable or contractual subrogation—the former is rooted in equitable principles, while the latter stems from the specific contractual terms of the policy. *Electric Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 963 (N.D. Ill. 2004); *Schultz v. Gotlund*, 138 Ill. 2d 171, 173, 561 N.E.2d 652, 653 (1990) ("There are two broad categories of subrogation rights: contractual or conventional rights and common law or equitable rights. Contractual rights are those expressly provided for in the insurance policy or other instrument. . . . The other class of right to subrogation, equitable subrogation, is implied to have been intended where necessary to avoid an inequitable and unfair result.").

---

subrogation) puts the cart before the horse; unless James River is a subrogee, it has no business seeking an adjudication of Cardinal Transport's potential claims against Canal.

[5] By contrast, were James River to assert claims premised on its own relationship or status vis-à-vis Canal, that would likely take the form of equitable contribution. "In insurance law, contribution is an equitable principle arising among co-insurers which permits one who has paid the entire loss to be reimbursed from other insurers who are also liable for the loss." *Schal Bovis, Inc. v. Cas. Ins. Co.*, 315 Ill. App. 3d 353, 362, 732 N.E.2d 1179, 1186 (2000). Although James River included a claim for equitable contribution in its original complaint, it did not include that claim in the Amended Complaint, which now appears to be based solely on James River's claim to be contractually subrogated to Cardinal Transport's claims against Canal. As the parties have not addressed the subject of equitable contribution, the Court hazards no opinion as to whether James River can assert a viable claim based on an equitable contribution theory.

### A. Contractual versus Equitable Subrogation

James River argues that it is contractually subrogated to Cardinal Transport based on the contractual transfer of rights clause in its policy. That clause reads:

> *Transfer of Rights of Recovery Against Others to Us.* If the insured has rights to recover all or any part of any payment we have made under this Coverage Part, those rights are transferred to us.

Compl. ¶ 26. This clause subrogates James River to Cardinal Transport's claim in the event it pays funds on Cardinal's behalf that should rightfully have been paid by a third party. *See Electric Ins. Co.*, 346 F. Supp. at 963 (policy clause transferring "rights to recover all or part of any payment" made by the insurer enabled plaintiff insurer to pursue a contractual subrogation claim); *National American Ins. Co. v. Progressive Corp.*, 43 F. Supp. 3d 873, 888 (N.D. Ill. 2014) (transfer of rights clause in insurance policy entitled plaintiff insurer to pursue a contractual subrogation claim). In practice, it enables James River to bring a contractual subrogation claim against Canal, asserting Cardinal Transport's rights against Canal as its own.

Canal contends, however, that notwithstanding this contractual subrogation provision, James River does not satisfy the requirements to pursue a subrogation claim. Canal maintains that to proceed as a subrogee, the plaintiff must show that "(1) the defendant carrier [is] primarily liable to the insured for a loss under a policy of insurance; (2) the plaintiff carrier [is] secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier . . . discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 323, 821 N.E.2d 269, 280 (2004).

James River counters that these are required elements of an *equitable* subrogation claim, and have no bearing on its claim, which is founded on a *contractual* subrogation provision rather than on equitable considerations. "When subrogation rights are created by an explicit contract –

such as the Transfer of Rights provision in the Policy," it argues, "the contract terms control the right to subrogation, rather than common law or equitable principles." Resp. at 5.

Whether contractual subrogation requires the same elements as equitable subrogation has been the subject of evolving, and sometimes inconsistent, case law in Illinois. In *SwedishAmerican Hospital Association of Rockford v. Illinois State Medical Inter-Insurance Exchange*, on which Canal primarily draws for support, the court stated that both equitable and contractual subrogation demand the same three elements. 395 Ill. App. 3d 80, 105, 916 N.E.2d 80, 101 (2009). But *SwedishAmerican* cannot bear the weight of Canal's argument. In equating the requirements for equitable and contractual subrogation, the *SwedishAmerican* court did not advert to, much less discuss, the question of whether the requirements for equitable subrogation also apply to contractual subrogation and the only case cited in support of its statement, *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 323, 821 N.E.2d 269, 280 (2004), discussed only equitable subrogation and did not involve a contractual subrogation provision.[6] Canal, moreover, ignores the fact that some 20 years ago the Seventh Circuit concluded in *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank*, 265 F.3d 601, 627 (7th Cir. 2001) that, under Illinois law, "[w]here the right is created by an enforceable subrogation clause . . . the contract terms, rather than common law or equitable principles, control." (quoting *Benge v. State Farm Mutual Auto. Ins. Co.*, 297 Ill. App. 3d 1062, 1071, 697 N.E.2d 914, 920 (1st Dist. 1998)). *See also Endurance Am. Specialty Ins. v. Victory Park Capital Advisors*, No. 18 C 08399, 2019 WL 2121118, at *5 (N.D. Ill. May 15, 2019) ("Illinois courts consistently uphold *contractual* subrogation clauses and

---

[6] It is not clear whether *SwedishAmerican* involved a contractual subrogation provision. James River says that it did not, but the opinion recites that "Dr. Hecht was required by the Hospital and Sari policies to cooperate with them in the subrogation of any payment made under their plans on his behalf," 395 Ill. App. 3d at 84, 916 N.E.2d at 85, which may imply that the relevant policies contained contractual subrogation provisions.

6

do not generally consider equitable subrogation principles when dealing with contractual subrogation agreements."); *Elec. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 963 (N.D. Ill. 2004) ("The right of an insurer to subrogation is measured by and depends solely on the terms of the subrogation provisions in the contract.") (quoting *Hack v. Multimedia Cablevision, Inc.*, 297 Ill. App. 3d 255, 231, 696 N.E.2d 694, 696 (1998)). Accordingly, in *Mutual Service Casualty*, the Seventh Circuit rejected the proposition that a defense to equitable subrogation could defeat a contractual subrogation claim. 265 F.3d at 628 (concluding that the Illinois Supreme Court "would not permit the [equitable compensated surety] defense in cases of contractual subrogation."). And where the Seventh Circuit has spoken as to an interpretation of state law, it is not open to this Court to offer an inconsistent interpretation. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) (district court was bound to follow Seventh Circuit's interpretation of state law notwithstanding that the Illinois Supreme Court had overruled the case on which the Court of Appeals' interpretation had been based); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). The Court therefore concludes that the transfer of rights clause controls here and the Court need not take into account the elements of equitable subrogation.

### B. Partial Subrogation

Canal raises another issue that proves more problematic for James River's contractual subrogation claim; that is, the unavailability of partial subrogation. Based on the allegations in the complaint and response brief, James River's costs, as of today, are limited to its defense expenses. To this Court's knowledge, James River has not yet paid or contributed to Cardinal Transport's judgment, as the underlying case was still pending appeal at the time of this case's filing. James River instead seeks to recover its defense costs and indemnify its future payments towards the judgment amount. As Canal correctly asserts, however, and notwithstanding its recognition that

equitable principles do not determine the requirements for contractual subrogation claims, Illinois law does not allow for partial subrogation—even where there was a contractual subrogation provision. *See Labella Winnetka v. General Cas. Ins. Co.*, 259 F.R.D. 143, 147 (N.D. Ill. 2009) (finding that insurer could not recover funds for partial payment of the plaintiff's loss because of Illinois's general rule prohibiting partial subrogation "where the debt has not been paid in full") (internal citations omitted); *Benge*, 297 Ill. App. 3d at 1072, 697 N.E.2d at 920 ("Clearly, an insurance carrier may not exercise its right to subrogation until it has paid the insured's damages under the policy giving rise to the subrogation rights."). In other words, an insurer is not allowed to recover funds from a third party for a partial payment; it must instead wait until it has paid off its liability completely and extinguished the debt of the third party.

Neither do courts carve out exceptions to partial subrogation based on the language of the subrogation clause. A contractual subrogation provision "does not alter the basic requirement that the [insurer] must first pay its insured before it may maintain suit against the alleged tortfeasor . . . for indemnity." *Johnson v. State Farm Fire & Cas. Co.*, 151 Ill. App. 3d 672, 675, 503 N.E.2d 602, 604 (1987). And in any event, even were this not the rule in Illinois, the result would be no different, as payment is a prerequisite under the terms of the Transfer of Rights clause in the James River policy. In this suit, James River seeks to assert Cardinal's rights to costs of defense and indemnity against Canal. To date (so far as this Court has been advised), James River has paid Cardinal Transport approximately $700,000 in defense costs, but has yet to make any indemnity payment. Unless James River limits its subrogation claim against Canal to recovery of monies it has actually paid, its subrogation claim is therefore premature. As such, it is appropriate to dismiss the Complaint without prejudice and the Court need not address the merits of the subrogation claim (which is premised on estoppel). But because it is clear that, at some point, James River will be

8

able to assert a ripe contractual subrogation claim against Canal, the Court will nevertheless address Canal's argument that James River's estoppel theory fails as a matter of law. That question has been fully briefed and, as a matter of judicial efficiency, there is no reason to defer its consideration until James River cuts a check to Cardinal for indemnity costs.

## II.     Canal's Duty to Defend

James River alleges that Canal breached its duty to defend Cardinal Transport in the underlying lawsuit. Under Illinois law, actual notice of a claim against the insured triggers an insurer's duty to defend. *Cincinnati Companies v. West Am. Ins. Co.*, 183 Ill.2d 317, 328, 701 N.E.2d 499, 504 (1998). The duty to defend is a weighty obligation—as has often been remarked, "[i]n Illinois, an insurer's duty to defend its insured is broader than its duty to indemnify." *National American*, 43 F. Supp. at 879. Accordingly, if an insurer wishes to dispute its duty to defend an insured, it has three options: (1) "seek a declaratory judgment regarding its obligations before trial of the underlying action"; (2) "defend the insured under a reservation of rights"; or (3) "refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 349 (7th Cir. 2010).[7]

James River argues that Canal falls into the third camp because it abandoned its duty to defend by refusing to actively participate in the litigation. Where an insurer initially undertakes the defense of an insured and then withdraws, it has breached its duty to defend. *See Trovillion v.*

---

[7] Exceptions to this general rule exist, such as the insured knowingly forfeiting an insurer's defense by directing the insurer not to participate in the litigation. *Commercial Underwriters v. Utica Mut. Ins. Co., Inc.*, No. 98 C 5484, 2002 WL 31357047, at *4 (N.D. Ill. Oct. 18, 2002). Canal does not argue for the application of any exceptions here so they are not further addressed.

9

*U.S. Fidelity & Guar. Co.*, 130 Ill. App. 3d 694, 699, 474 N.E.2d 953, 957 (1985) (finding insurer breached duty to defend because "if [the insurer] . . . determined that the policy provided no coverage for this occurrence it could not simply withdraw and become a bystander"); *Reis v. Aetna Cas. & Sur. Co. of Illinois*, 69 Ill. App. 3d 777, 782, 387 N.E.2d 700, 704 (1978) ("In Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage."). In *Commercial Underwriters v. Utica Mutual Insurance Company*, the defendant insurer acted in a manner similar to Canal, retaining defense counsel to monitor the situation, but "remain[ing] on the sidelines" and only occasionally communicating with the insured's true defense counsel. No. 98 C 5484, 2002 WL 31357047, at *9 (N.D. Ill. Oct. 18, 2002). The court found that such minimal action did not amount to defending the insured in the underlying suit. *Id.*

The same reasoning applies to the facts alleged here. Though Canal initially agreed to defend Cardinal Transport, it retreated to a monitoring role and disclaimed its liability prior to trial, rather than continuing to defend Cardinal or seeking a declaratory judgment. An insurer cannot satisfy its duty to defend by abandoning responsibility for that defense. Such conduct amounts to a breach of Canal's duty to defend Cardinal Transport and justifies estoppel of Canal's policy defenses.

Canal does not (cannot, on a motion to dismiss) dispute that it failed to defend Cardinal Transport in the underlying litigation. It argues instead that estoppel only comes into play if an insurer undertakes the defense in an underlying suit and thereafter causes prejudice to the insured. It's true that an insurer is estopped from raising policy defenses at a later point if its defense prejudices the insured. *See Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1182 (7th Cir. 1994). Prejudice is not a prerequisite, though, where the insurer improperly abstains from defending its

10

insured in the first place. *See Commercial Underwriters*, 2002 WL 31357047, at *10 (finding that there was no need to demonstrate prejudice where defendant insurer "did not undertake the defense of its insureds"). On the facts alleged here, Canal never truly assumed Cardinal Transport's defense, and therefore a showing of prejudice is not required.

Canal also contends that estoppel is irrelevant because it is a defense and therefore does not provide an independent basis of relief. While estoppel typically functions as a defense, Illinois law recognizes it as a "distinct doctrine that stands on its own." *Employers Ins. of Wausau v. Ehlco Liquidation Trust*, 186 Ill.2d 127, 151, 708 N.E.2d 1122, 1135 (1999). Estoppel "arose out of the recognition that an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Id.* In that sense, as James River rightly notes, a court's finding of estoppel functions as a sort of declaratory judgment, barring the defendant from raising policy defenses to excuse its non-coverage at any point in the litigation. *Id.* at 186 Ill. 2d at 151-52, 708 N.E.2d at 1135.

The implications of estoppel are far-reaching, if somewhat ill-defined. Two competing strands have emerged in Illinois courts as to the extent of an insured's recovery based on estoppel. One theory holds that absent bad faith on the insurer's part, an insurer is only liable for the judgment up to its policy limit if it breached the duty to defend. *Conway v. Country Cas. Ins. Co.*, 92 Ill. 2d 388, 397-98, 442 N.E.2d 245, 249 (1982) (quoting *Reis v. Aetna Cas. & Surety Co.*, 69 Ill. App. 3d 777, 790, 25 Ill. Dec. 824 (1978)). The other theory departs from the *Conway* line of cases and advocates for a "proximate cause" approach, in which the insurer may be liable beyond its policy limit, but only if its failure to defend ***caused*** the excess judgment. *Delatorre v. Safeway*, 2013 IL App (1st) 120852 ¶¶ 34, 35, 989 N.E.2d 268, 276. Typically, the measure of damages for such a breach equals the total amount of the judgment against the insured. *Id.* The Seventh Circuit

11

has declined to affirmatively endorse one approach over the other. *Hyland v. Liberty Mutual Fire Ins.*, 885 F.3d 482, 486 (7th Cir. 2018) ("We are reluctant to get into this dispute about the meaning of Illinois insurance law"). Under both approaches, however, an insured is typically entitled to reimbursement for costs incurred during litigation, including reasonable attorney's fees. *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 702 (N.D. Ill. 2011) (quoting *Conway*, 92 Ill. 2d at 397, 442 N.E.2d at 249).

Neither the bad faith nor proximate cause approach applies here. The complaint does not support an inference that Canal acted in bad faith or that its failure to defend Cardinal caused the $5.4 million judgment. While Canal's actions could—based on what James River has alleged—be deemed inappropriate and unreasonable, they do not rise to the level of bad faith, which requires deliberate deception or malicious intent on the insurer's part. *See Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 702 (N.D. Ill. 2011) (insurer's breach of duty to defend, though vexatious and unreasonable, was not in bad faith as there were no allegations of malicious intent or deliberate deception). Accordingly, if the facts bear out as James River has alleged, Canal will be liable to Cardinal Transport for damages up to $1 million, its policy limit, because of its breach of the duty to defend, plus reasonable attorney's fees. The question of whether Canal owes some portion of this liability and costs of defense to James River, under contractual subrogation, turns on whether Cardinal has "rights to recover" from Canal "all or any part of any payment" made by James River. The Court turns next to that question.

### III. Cardinal Transport's Right to Recover from Canal

The Court concludes that Cardinal Transport has "rights to recover" from Canal the costs of defense paid by James River. Based on the allegations of the complaint, Canal is independently liable to Cardinal Transport for the costs of defense it has incurred. Breaching the duty to defend

12

triggers an insurer's obligation to reimburse the insured's defense costs. *Lockwood Int'l, B.V. v. Volm Bag Co., Inc.*, 273 F.3d 741, 746 (7th Cir. 2001). Canal was, and remains, independently liable to Cardinal Transport for defense costs.

Canal argues, however, Cardinal has no claim to additional reimbursement of its costs of defense from a second insurer; reimbursing Cardinal for defense costs that have already been paid would constitute "double recovery" because Cardinal could collect defense expenses from both Canal and James River. But this misconstrues the nature of the subrogation claim. Canal's perspective is backwards; the question is not whether the subrogor is entitled to ***additional*** payment from a third party but whether the subrogor was entitled to payment from the third party in the first instance—that is, when the subrogee paid a debt that the subrogor could have recovered from the third party. The payment, moreover, would not result in double recovery for the insured, but reallocation of liability for the payment the insured received.

So far as the Court can tell based on the pleadings, both parties owed a duty to defend Cardinal Transport; the insured could have sought reimbursement of its costs of defense against either or both. James River stepped up and paid the lion's share of those costs based on the contractual right to assert Cardinal's rights to recover costs of defense from Canal. This scenario gives rise to a valid claim for contractual subrogation.

Further, "[u]nder Illinois law, an insurer that fulfills its obligations to defend a mutual insured can recover from a co-insurer of the costs expended in such a defense . . . either under a contribution or subrogation theory." *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F. Supp. 909, 914 (N.D. Ill. 1989). James River has opted for the latter. Because Canal has an obligation under its policy to pay costs of defense, Cardinal Transport has the right to recover costs of defense from

13

Canal. Under its transfer of rights clause, the right to recover those costs is transferred to James River.

The same reasoning governs James River's subrogation to any indemnity claim that Cardinal Transport has against Canal. To the extent that James River indemnifies Cardinal Transport against a liability as to which Canal had the obligation to pay, James River can assert a contractual subrogation claim to recover its payment (in the event that Canal has not satisfied its own contractual obligation; if Canal has paid all it is obligated to pay under its policy, of course, Cardinal would have no claim against Canal that James River could try to recoup; in that case, James River's payment would then be in satisfaction of its own liability).

As a final note, none of this is to say that James River is entitled to recover all of its costs of defense and indemnity, only that it has a claim. As the Seventh Circuit's opinion in *Taco Bell* teaches, the apportionment of the costs of defense between the two insurers equally liable for them may not be simply a question of dividing the costs equally. 388 F.3d at 1078-79. Any determination as to a reasonable allocation of costs of defense and indemnity must await further factual development.

\*     \*     \*

In summary, James River's contractual subrogation claim is premature, and as a result, Canal's motion to dismiss is granted. The dismissal is without prejudice. James River is granted leave to replead and assert its full subrogation claim, if known, by May 14, 2021. Failing that, the case will be dismissed without prejudice and James River can file a new case when it has a claim that is ripe.

Date: April 19, 2021

                                                                      John J. Tharp, Jr.
                                                                      United States District Judge

15