**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAMES RIVER INSURANCE COMPANY,

    Plaintiff,

v.                                      CASE NO. 1:19-cv-05208

CANAL INSURANCE COMPANY,

    Defendant.

_____/

## SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

JAMES RIVER INSURANCE COMPANY ("James River") files its second amended complaint against CANAL INSURANCE COMPANY ("Canal"), and alleges:

### NATURE OF ACTION

1. This is an action for damages and declaratory relief under 28 U.S.C. § 2201. Essentially, a heavy metal pipe was on a tractor trailer. It was not properly secured. It fell off and crushed a claimant's foot. Canal improperly disclaimed coverage under its Business Auto policy, among other reasons, because a forklift was also involved in causing the accident. Canal neglected to recognize that a covered auto, the tractor trailer, was also involved in causing the accident. And regardless, Canal failed to file a declaratory judgment action or otherwise obtain a concession from its insured that there is no coverage so it is equitably estopped from disclaiming coverage under Illinois law.

### JURISDICTION AND VENUE

2. Jurisdiction exists under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs. At issue are (a) the costs of defending the James River and Canal mutual insured, Cardinal

Transport, Inc. ("Cardinal Transport"), which exceed $700,000; and, (b) the indemnity obligations in relation to James River's payment of a $5,098,791.22 judgment, plus post-judgment interest.

3. Venue is proper in this district because a "substantial part of the events … giving rise to this action occurred" in this district. 28 U.S.C. § 1391(b)(2). More specifically, the Canal and James River insurance policies were issued and delivered to Cardinal Transport in this district.

4. All conditions precedent have occurred, been performed, or have been waived.

## THE PARTIES

5. James River is a Virginia corporation with its principal place of business in Richmond, Virginia. James River issued a commercial general liability insurance policy to Cardinal Transport. James River fully defended and indemnified Cardinal Transport.

6. Canal is a South Carolina corporation with its principal place of business in Greenville, South Carolina. Canal issued a Business Auto insurance policy to Cardinal Transport. Canal improperly disclaimed coverage to Canal and improperly shirked its duty to defend and indemnify Cardinal Transport, forcing James River to unilaterally defend and indemnify Cardinal Transport.

## THE UNDERLYING SUIT INVOLVED A "COVERED AUTO"

7. Richard Edwards, Jr. filed suit against Cardinal Transport and others in the U.S. District Court in West Virginia (the "underlying lawsuit"). A copy of the operative complaint is attached as Exhibit "A."

8. According to the complaint, on 10/03/2015, Danny McGowan and McElliotts Trucking were loading metal pipe onto a commercial vehicle (the "Truck") that was leased and operated in interstate commerce by Cardinal Transport. (Compl., ¶¶11,13,16.)

9. The underlying lawsuit alleged that McGowan used a forklift to lift the pipe from the ground and place it on the Truck. (Compl., ¶18.)

10. The underlying lawsuit alleged that Edwards was assisting this process by blocking and securing the pipe after it was placed on the Truck. (Compl., ¶19.)

11. The underlying lawsuit alleged that "McGowan placed the very last piece of pipe onto the Truck" and Edwards began to secure it to the Truck. Before Edwards disconnected the strap connecting that pipe to the forklift, however, the forklift backed up "pulling the heavy pipe off the truck." (Compl., ¶¶20-21.) The pipe fell from the Truck and crushed Edwards's foot. (*Id.*)

12. According to Edwards, his injuries were "a result of the use of the commercial truck … in a negligent and reckless manner." (Compl., ¶44, 68.)

13. Edwards alleged that the Truck "was a vehicle being used at the time of the injury as it was meant to be used and/or in the [] operations" of Cardinal Transport. (Compl., ¶¶63, 84.)

14. Further, Edwards alleged that Cardinal Transport had acted "in a negligent and reckless manner in the loading operations and use of the commercial vehicle [*i.e.*, the Truck]." (Compl., ¶76.)

15. The underlying lawsuit alleged, among other things, that Cardinal Transport was vicariously liable for the negligence of the other defendants because they were operating and/or using the Truck as Cardinal Transport's agents (Compl., ¶¶61-67); that Cardinal Transport was liable for negligently entrusting the Truck to the use of the other defendants (Compl., ¶¶68-71); that Cardinal Transport was liable for having negligently hired, trained, or retained the other defendants concerning the "proper use of the commercial vehicle" (Compl., ¶¶75, 78-80); and, that Cardinal Transport was vicariously liable for the negligence of the other defendants because they were operating the Truck under Cardinal Transport's U.S. DOT number, pursuant to the doctrine of lease/logo liability (Compl., ¶¶83-87).

## JAMES RIVER'S PAYMENT OF THE UNDERLYING JUDGMENT

16. The underlying lawsuit proceeded to trial. The jury returned a verdict against Cardinal Transport that was ultimately reduced to a judgment in the amount of $5,098,791.22.

17. The judgment was appealed to the Fourth Circuit Court of Appeals.

18. On 6/26/2020, the Fourth Circuit Court of Appeals affirmed the judgment.

19. James River subsequently paid and funded the entire $5,098,791.22 judgment, plus post-judgment interest. Accordingly, this action against Canal is ripe. *See* Order, DE 33 at 8-9; *Johnson v. State Farm Fire & Cas. Co.* 151 Ill. App. 3d 672, 675, 503 N.E.2d 602, 604 (1987).

## THE CANAL BUSINESS AUTO POLICY

20. Canal issued a Business Auto insurance policy to "Cardinal Transport, Inc.," as the Named Insured, bearing Policy No. PIA07664202, and effective from 05/01/2015 through 05/01/2016 ("Canal Business Auto Policy"). A copy of the Canal Business Auto Policy is attached as Exhibit "B."

21. The Canal Business Auto Policy was issued and delivered to Cardinal Transport in Illinois. Accordingly, Illinois law governs issues of insurance coverage, rights, and duties under the policy.

22. The Canal Business Auto Policy provides, in pertinent part, as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"…
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages…

(Ex. B, Policy Form CA 00 01 10 13, Pg. 2/12.)

23. The Canal Business Auto Policy provides Cardinal Transport with primarily insurance coverage for liability involving "any 'auto'" that has 10,000 GVW or more.

24. The tractor trailer involved in the underlying lawsuit is a "covered auto."

## THE JAMES RIVER CGL POLICY

25. James River issued a commercial general liability policy to "Cardinal Transport, Inc." as the Named Insured, bearing Policy No. 00065770-0, and effective from 02/19/2015 through 02/19/2016 ("James River CGL Policy"). A copy of the James River CGL Policy is attached as Exhibit "C."

26. The James River CGL Policy was issued and delivered to Cardinal Transport in Illinois. Accordingly, Illinois law governs issues of insurance coverage, rights, and duties under the James River CGL Policy.

27. The James River CGL Policy has a limit of $1,000,000 for Each Occurrence.

28. The James River CGL Policy provides, in pertinent part, as follows:

**Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. …

(Ex. C, Policy Form AP2104US 10-12, Pg. 1/2.)

29. Among others, the James River CGL Policy includes an Absolute Auto, Aircraft and Watercraft Exclusion, as well as an Injury to Independent Contractors and Subcontractors Exclusion.

## CANAL IMPROPERLY DISCLAIMED COVERAGE AND REPEATEDLY BREACHED ITS DUTY OF GOOD FAITH

30. On April 1, 2016, Canal agreed to defend Cardinal Transport in the underlying lawsuit under a reservation of rights. A copy of the Canal reservation of rights letter is attached as Exhibit "D."

31. Canal hired attorney Dan Schuda of the law firm of Anspach Meeks and Ellenberger in Charleston, West Virginia, to defend Cardinal Transport in the underlying lawsuit.

32. On April 14, 2016, the law firm of Flaherty Sensabaugh & Bonasso—defense counsel hired by James River—also appeared on behalf of Cardinal Transport.

33. By letter dated April 13, 2016, Canal told Cardinal Transport that Canal had asked the Canal attorneys to "step back and assume a monitoring role while [one of the James River attorneys] serves as lead counsel." A copy of Canal's April 13, 2016 letter is attached as Exhibit "E."

34. After April 2016, the Canal attorneys "monitored" various court hearings and depositions, but did not take any depositions, defend any witness depositions, draft any substantive motions, assist with trial or the appeal, or otherwise defend Cardinal Transport in the underlying lawsuit.

35. Canal also sent representatives to "monitor" two different mediations but did not offer any funds to assist with resolution of the claims against Cardinal Transport.

36. On August 2, 2017, the district court in the underlying lawsuit partially denied Cardinal Transport's motion for summary judgment. The district court's ruling was based, in part, on federal law under which Cardinal Transport was responsible for control, operation, and use of the Truck. According to the district court, operation and use of the Truck could easily include loading of the Truck—which is how Edwards was injured. A copy of the district court's August 2, 2017 order is attached as Exhibit "F."

37. On September 29, 2017, Edwards issued a demand to Canal and James River to fully resolve the underlying lawsuit for $400,000 (the "September 2017 Demand"). Even though this demand was well within the Canal Business Auto Policy limits, Canal summarily rejected the demand and refused to engage in any settlement negotiations.

38. By failing to give Cardinal Transport's interests at least equal consideration to its own interests, Canal breached its duty of good faith and fair dealing.

39. Further, Canal failed to promptly report the September 2017 Demand to Cardinal Transport, failed to advise Cardinal Transport of the possibility of an excess judgment if the case went to trial, and failed to explain how Cardinal Transport could protect itself from exposure for personal liability.

40. On October 2, 2017, approximately two weeks before the scheduled trial, Canal was presented with a second settlement opportunity to resolve the underlying lawsuit within policy limits (the "October 2017 Demand").

41. On October 5, 2017, Canal informed Cardinal Transport that it was rejecting the October 2017 Demand and unilaterally withdrawing its defense altogether. According to Canal, its coverage position was based on "deposition testimony during the discovery period" that "appears" to bring the loss within the policy's Mechanical Device Exclusion. A copy of Canal's disclaimer is attached as Exhibit "G."

42. Without any adjudication, and without confirming it with Edwards or Cardinal Transport, Canal assumed that the Truck was merely incidental to the accident.

43. Canal did not file a declaratory judgment action against Cardinal Transport for a judicial determination that it properly disclaimed coverage.

44. In lieu of filing a declaratory judgment action, Canal also did not obtain a stipulation from Cardinal Transport that Canal properly disclaimed coverage.

45. Additionally, Canal simultaneously misled Cardinal Transport into believing that it was providing a defense and protecting its interest—even though Canal had no intention of resolving the claims as evidenced by its hasty disclaimer on the eve of trial.

46. Canal's inappropriate conduct and breach of its duty to defend cost Cardinal Transport multiple settlement opportunities below policy limits. When Canal was actually presented with settlement demands, Canal failed to fairly evaluate all relevant evidence relating to

liability and damages, improperly relied on information that was contrary to and/or had not been alleged in the underlying lawsuit, and failed to consider the reasonable probability of an adverse verdict and excess judgment.

47. Further, Canal wrongfully considered the presence of James River's insurance as a relevant factor in discharging Canal's duty to settle. Essentially, Canal mistakenly assumed it could avoid exposure for its risky strategy to disclaim coverage on the eve of trial—based on improper facts and legal authority—merely because Cardinal Transport had other available insurance.

48. Canal's handling of its defense and settlement obligations reveal that it repeatedly considered its own interests greater than Cardinal Transport's interests, breached its duty of good faith and fair dealing, and directly exposed its insured to an excess judgment.

### COUNT I – ESTOPPEL BASED ON CANAL'S BREACH OF ITS DUTY TO DEFEND CARDINAL TRANSPORT

49. James River incorporates paragraphs 1 through 48 here.

50. Canal had a duty to defend Cardinal Transport in the underlying lawsuit because the underlying lawsuit alleged facts and theories of liability against Cardinal Transport that were sufficient to establish potential or actual coverage under the Canal Business Auto Policy.

51. Canal abandoned the defense that it agreed to provide to Cardinal Transport by unilaterally deciding to "step back" and merely "monitor" the defense of Cardinal Transport that was actually provided by James River. By retreating to a "monitoring" role and failing to actively defend Cardinal Transport, Canal breached its duty to defend. *See, e.g.*, Order, DE 33 at 10; *see also, Commercial Underwriters v. Utica Mut. Ins. Co.*, No. 98-C-5484, 2002 WL 31357047 (N.D. Ill. Oct. 18, 2002).

52. Canal never filed a declaratory judgment action to obtain a ruling on its rights and obligations to Cardinal Transport in relation to the underlying lawsuit, nor did it seek any ruling permitting Canal to stop providing a defense to Cardinal Transport.

53. Canal never sought to intervene in the underlying lawsuit, nor did it seek any special findings to support its assertion that the Canal Business Auto Policy did not provide coverage for the underlying lawsuit.

54. Canal did not obtain Cardinal Transport's consent, waiver, instruction, or agreement that would release Canal from its duty to defend or indemnify Cardinal Transport in connection with the underlying lawsuit.

55. Having failed to provide a defense to Cardinal Transport or seek a ruling on its coverage obligations, Canal is estopped from asserting or relying on any coverage defenses that it might otherwise have asserted. *Employers Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill.2d 127, 151, 708 N.E.2d 1122, 1135 (1999).

56. Having failed to seek a timely declaration of its rights and obligations, Canal cannot justify its coverage position or actions by relying on facts or information outside the underlying lawsuit and the Canal Business Auto Policy.

57. As a result of Canal's actions and its failure to defend Cardinal Transport, James River was forced to unilaterally defend Cardinal Transport and pay all defense expenses throughout the underlying lawsuit, including mediations, trial, and appeal.

58. Pursuant to the Transfer of Rights Condition in the James River CGL Policy, the rights of Cardinal Transport against Canal have been transferred to James River to the extent that James River has made payments for the benefit of Cardinal Transport. *See* Order, DE 33 at 6.

## **COUNT II – CONTRACTUAL SUBROGATION**

59. James River incorporates paragraphs 1 through 48 here.

60. As a result of Canal's failure to defend Cardinal Transport, James River was forced to unilaterally defend Cardinal Transport and to pay for all defense efforts throughout the underlying lawsuit, including mediations, trial, and appeal.

61. James River paid over $700,000 in expenses, fees, and costs defending Cardinal Transport in the underlying lawsuit.

62. In addition, James River paid the entire $5,098,791.22 judgment, plus post-judgment interest.

63. Pursuant to the Transfer of Rights Condition in the James River CGL Policy, the rights of Cardinal Transport against Canal have been transferred to James River to the extent that James River made payments for the benefit of Cardinal Transport. *See* Order, DE 33 at 6.

64. James River is contractually subrogated to the rights of Cardinal Transport against Canal and is entitled to full reimbursement for all defense an indemnity payments that Canal should have paid for the benefit of Cardinal Transport since April 13, 2016. *See, e.g.*, *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 627 (7th Cir. 2001).

65. As a result of James River's payments made on behalf of Cardinal Transport, James River has a contractual right of subrogation to recover all or some of these payments from Canal.

## COUNT III – EQUITABLE SUBROGATION

66. James River incorporates paragraphs 1 through 48 here.

67. In the alternative to contractual subrogation, James River is entitled to equitable subrogation from Canal under applicable Illinois law.

68. Pursuant to the terms of the Canal Business Auto Policy, Canal owed a duty to defend and indemnify Cardinal Transport with regard to the underlying lawsuit.

69. Canal refused and/or failed to honor its duties to settle and indemnify Cardinal Transport with regard to claims in the underlying lawsuit.

70. As a result of Canal's failure to honor its duties and obligations under the Canal Business Auto Policy, James River was forced to unilaterally defend Cardinal Transport and fund the entire litigation and judgment, that was owed, and which should have been funded, in whole or in part, by Canal

71. Canal was primarily liable to Cardinal Transport for the claims asserted in the underlying lawsuit.

72. James River was secondarily liable to Cardinal Transport for the claims asserted in the underlying lawsuit.

73. As a result of James River's payment of more than $700,000 in defense expenses, plus payment of the entire $5,098,791.22 judgment, all liability against Cardinal Transport has been discharged.

74. As a result of James River's defense and indemnity payments made on behalf of Cardinal Transport in the underlying lawsuit, James River has an equitable right of subrogation to recover all or some of these payments from Canal.

## COUNT IV – EQUITABLE CONTRIBUTION

75. James River incorporates paragraphs 1 through 48 here.

76. In the alternative to contractual subrogation and equitable subrogation, James River is entitled to equitable contribution from Canal under applicable Illinois law.

77. Based on the allegations in the underlying lawsuit, both the James River CGL Policy and Canal Business Auto Policy covered Cardinal Transport for actual or alleged liability arising out of the Truck.

78. There is sufficient identity of the risks covered by the James River CGL Policy and the Canal Business Auto Policy with respect to the underlying litigation.

79. Pursuant to the doctrine of equitable contribution, James River is entitled to recover a 50% share of all defense and indemnity expenses that James River paid on behalf of Cardinal Transport since the time that Canal's duty to defend Cardinal Transport was triggered.

## **COUNT V – BAD FAITH FAILURE TO SETTLE**

80. James River incorporates paragraphs 1 through 48 here.

81. At all relevant times, Canal, as Cardinal Transport's primary insurer, had the exclusive right to control the defense and settlement of the underlying lawsuit.

82. Canal knew, or should have known, that there was a reasonable probability of liability against Cardinal Transport for the accident in the underlying lawsuit.

83. Canal knew, or should have known, that Edwards suffered severe injuries as a direct result of the underlying accident, including an amputated right leg, which required multiple surgeries and extensive and costly medical treatment.

84. Canal therefore knew, or should have known, that there was a reasonable probability that Cardinal Transport would be liable for a judgment in excess of the Canal Business Auto Policy limit.

85. By informing Cardinal Transport that it was defending the underlying lawsuit, Canal exercised control over settlement decisions, and therefore owed a duty of good faith and fair dealing with respect to all settlement offers. Among others, Canal was required to treat Cardinal Transport's interests with as much weight its own interests in discharging its duty to settle.

86. Canal breached its duty to settle and exposed Cardinal Transport to an excess judgment in the following ways:

   (a) continually and repeatedly giving treating its own interests with greater importance than Cardinal Transport's interests even though it had multiple opportunities to settle within policy limits;

(b) continually and repeatedly failing to consider all relevant information in assessing the merits of the underlying lawsuit, including the reasonable probability of liability against Cardinal Transport coupled with a damages exposure in excess of the policy limit;

(c) refusing to engage in any meaningful settlement negotiations with underlying plaintiff despite multiple opportunities;

(d) continually and repeatedly refusing to cooperate with James River's counsel in effectuating a settlement of its mutual insured;

(e) failed to promptly report settlement opportunities to Cardinal Transport and advise of the likelihood of exposure in excess of the available insurance;

(f) agreeing to participate in multiple mediations with no intention of contributing any money toward settling the claims against Cardinal Transport;

(g) continually and repeatedly failing to respond to Edwards's counsel settlement offers, refusing to make counter-offers, and otherwise failing to negotiate a resolution of the underlying lawsuit;

(h) engaging in a risky strategy to disclaim coverage altogether on the eve of trial, based on a meritless coverage decision;

(i) improperly considering James River's involvement as a relevant factor in deciding whether to accept settlement offers within the limits of the Canal Business Auto Policy;

(j) unreasonably and vexatiously exposing James River to a potential bad faith claim because, had James River not stepped in to unilaterally defended, James River too would have been exposed to bad faith liability;

87. Canal owed a duty to James River and to Cardinal Transport to act reasonably and in good faith in settling or attempting to settle the underlying lawsuit.

88. Canal breached its duty and obligations to James River and Cardinal Transport by failing to contribute any of its primary policy limits toward settlement of the underlying lawsuit.

89. Canal also breached its duty and obligations to Cardinal Transport and to James River by failing to preserve and/or protect the available limits of the James River CGL Policy.

90. Canal's conduct, actions, and statements also constitute a breach of Canal's duty of good faith and fair dealing to both Cardinal Transport and James River.

91. As a proximate result of Canal's negligent, reckless, willful and/or bad faith conduct, Canal breached its duty to settle. Canal's breach forced Cardinal Transport to go trial and risk a judgment in excess of the policy limit that was reasonably probable. *See, e.g.*, *Scroggin v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 1030, 393 N.E.2d 718, 720 (1979).

## **COUNT VI – VEXATIOUS AND UNREASONABLE CONDUCT PURSUANT TO 215 ILCS 5/155**

92. James River incorporates paragraphs 1 through 48 here.

93. On September 29, 2017, Edwards issued a demand to Canal and James River to resolve the claims against Cardinal Transport for $400,000. The demand was well within the applicable limit of the Canal Business Auto Policy.

94. Upon receipt of the September 29, 2017 settlement demand, Canal knew, or should have known, that: (1) the district court had recently denied Cardinal Transport's motion for summary judgment regarding liability for the underlying accident; (2) there was a reasonable probability that Cardinal Transport was liable to Edwards based on Cardinal Transport's control, operation, and use of the Truck; (3) Edwards suffered severe injuries as a result of the underlying accident, including an amputated right leg and extensive medical treatment; (4) Edwards's damages were excessive and directly related to the underlying accident; and (5) there was a reasonable probability that verdict against Cardinal Transport would exceed the applicable limit under the Canal Business Auto Policy.

95. Canal failed to timely inform Cardinal Transport of the September 2017 settlement demand, and also failed to advise Cardinal Transport of its potential exposure to a judgment in excess of the Canal Business Auto Policy limits.

96. In response to the September 2017 settlement demand, Canal never offered to contribute funds to effectuate settlement, never fairly evaluated the merits of the claim, and failed to treat Cardinal Transport's interest at least as equal to its own.

97. On October 2, 2017, merely two weeks before the scheduled trial, counsel for Edwards issued a second demand to settle and release all claims against Cardinal Transport for $1,000,000.

98. On October 5, 2017, Canal's counsel wrote to Cardinal Transport advising that it was declining Edwards's demand to settle the case, based on its determination that it "appeared" the loss was excluded from coverage.

99. Canal's disclaimer was based on improper extrinsic evidence, as well as information that was contrary to and/or had not been alleged in the underlying lawsuit, and which was inconsistent with the district court's August 2, 2017, ruling on Cardinal Transport's motion for summary judgment.

100. Further, Canal improperly attempted to justify its disclaimer by relying on inapposite West Virginia law.

101. Canal shirked its defense and settlement obligations, engaged in a risky and highly inappropriate strategy to disclaim coverage on the eve of trial, even though it knew that liability was reasonably possible and the damages would likely exceed the available insurance.

102. Despite owing a duty of good faith and fair dealing toward Cardinal Transport, neither Canal nor its defense counsel advised Cardinal Transport of the potential for an excess judgment, nor did they advise Cardinal Transport how it might avoid personal exposure.

103. Canal thereafter failed to take any further action to resolve or attempt to resolve the case, or to protect the interests of its insured, Cardinal Transport.

104. The underlying lawsuit ultimately resulted in an excess judgment against Cardinal Transport in the amount of $5,098,791.22. James River paid the entire judgment, plus post-judgment interest, in order to protect its insured.

105. Illinois Statute 215 ILCS 5/155 ("Section 155") provides in relevant part as follows:

155. Attorneys fees.

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

   (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

   (b) $60,000;

   (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

106. Canal's conduct is in violation of Section 155 in that it vexatiously and unreasonably:

(a) refused to resolve or delayed settling the claim and underlying lawsuit;

(b) failed to protect Cardinal Transport's interests in breach of its duties and obligations under the Canal Business Auto Policy;

(c) breached its duty of good faith and fair dealing by way of its conduct, statements, and actions that were clearly motivated by Canal's self-interest to save its policy limits at the expense of James River and Cardinal Transport's exposure;

(d) failed to protect Cardinal Transport from a potential excess verdict;

(e) failed to protect Cardinal Transport's rights under the James River CGL Policy;

(f) failed to cooperate with James River to the mutual benefit of Canal's and James River's insured, Cardinal Transport;

(g) forced James River into an untenable position having to unilaterally defend Cardinal Transport and then take the extraordinary step of funding the entire $5,098,791.22 judgment on behalf of Cardinal Transport; and

(h) failed to preserve Cardinal Transport's available policy limits under the James River CGL Policy.

## REQUESTED RELIEF

WHEREFORE, James River respectfully requests this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Canal Business Auto Policy;

b. Declare that Canal owed coverage to Cardinal Transport in the underlying lawsuit and that Canal improperly disclaimed coverage;

c. Declare that coverage under the Canal Business Auto Policy is primary to coverage under the James River CGL Policy;

d. Enter judgment against Canal requiring it to reimburse James River for all the attorney's fees and costs that James River incurred in unilaterally defending the underlying action;

e. Alternatively to d. if Canal is not primary to James River, enter judgment against Canal for its proportionate share of the attorney's fees and costs that James River has incurred in unilaterally defending the underlying action;

f. Enter judgment against Canal requiring it to pay its limit towards satisfaction of the judgment in the underlying action;

g. Declare that Canal breached its duties of good faith and fair dealing toward Cardinal Transport;

h. Enter judgment against Canal awarding compensatory, consequential, punitive, and exemplary damages for Canal's breach of its duties of good faith and fair dealing;

i. Enter judgment finding that Canal's conduct, actions, statements, and breaches of its policy obligations were vexatious and unreasonable in violation of Section 155;

j. An order finding that James River is entitled to their attorneys' fees, costs, and interest, as well as an amount not to exceed $60,000 in accordance with Section 155;

k. Award James River all costs it incurred to prosecute this action; and

l. All such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

By: s/ Aaron Warren
*Counsel James River Insurance Company*

Preetha Jayakumar
Clyde & Co US LLP
55 West Monroe Street
Suite 3000
Chicago, IL 60603
312 635 7000
Preetha.Jayakumar@clydeco.us

Aaron Warren (admitted *pro hac vice*)
Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
305 446 2646
Aaron.Warren@clydeco.us