IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RIVER INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 CV 5208 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| CANAL INSURANCE COMPANY, | ) ) | |
| Defendant. | ) | |

### ORDER

For the reasons set forth in the Statement below, the defendant's motion to dismiss Counts III-VI of the plaintiff's second amended complaint, ECF No. 42, is denied, and the plaintiff's motion to dismiss the defendant's counterclaim for declaratory judgment, ECF No. 47, is denied.

### STATEMENT

Plaintiff James River Insurance Company ("James River") has sued defendant Canal Insurance Company ("Canal") for failure to defend and indemnify their shared insured, Cardinal Transport, Inc. ("Cardinal Transport'), in an underlying action in West Virginia. The underlying action is *Edwards v. Melilots Trucking LLC*, No. 3:16-1879, 2018 WL 6531680 (S.D. W. Va. Dec. 11, 2018), *aff'd sub nom. Edwards v. Cardinal Transp., Inc.*, 821 F. App'x 167 (4th Cir. 2020). Canal initially agreed to defend Cardinal Transport in *Edwards* under a reservation of rights and hired a law firm to defend Cardinal Transport, but Canal later asked its attorneys to step back into a "monitoring role." 2d Am. Compl. ¶ 30-35, ECF No. 36. Prior to trial, on September 29, 2017, the *Edwards* plaintiff issued a $400,000 demand to Canal and James River to fully resolve the case. *Id*. at ¶ 37. James River alleges (and Canal denies) that Canal rejected the demand, refused to engage in settlement negotiations, failed to report the demand to Cardinal Transport, and failed to advise Cardinal Transport of the risks of an excess judgment if the case went to trial. *Id*. at ¶ 37-39. Canal was presented with a second settlement demand shortly thereafter, and it responded by rejecting the demand and withdrawing its defense altogether, explaining that deposition testimony obtained during discovery appeared to bring the loss within a policy exclusion. *Id*. at ¶ 40-41. The underlying action went to trial in August 2018, the jury returned a verdict for the plaintiff, the district court entered a judgment for over $5 million in damages and denied Cardinal Transport's motion for a new trial, and the Fourth Circuit affirmed in June 2020.

In this action, James River seeks to recover its costs of defending Cardinal Transport in *Edwards* and indemnifying Cardinal Transport for the judgment, among other relief. *Id*. at 17-18. The operative, second amended complaint asserts six theories: estoppel based on Canal's breach of its duty to defend Cardinal Transport (Count I); contractual subrogation (Count II); equitable

subrogation (Count III); equitable contribution (Count VI); bad faith failure to settle (Count V); and vexatious and unreasonable conduct pursuant to 215 ILCS 5/155 (Count VI).

Canal filed an answer and affirmative defenses, ECF No. 40, as well as a counterclaim for declaratory judgment, ECF No. 41. In the counterclaim, Canal alleges that James River requested in April 2016 that James River's retained defense counsel serve as single lead defense counsel. Countercl. ¶ 10-16. James River explained that a single lead defense counsel would be more efficient and effective, and it argued that its counsel should take on that role because Canal might later disclaim coverage. *Id*. at ¶ 14. While James River had agreed to defend Cardinal Transport without a reservation of rights, *id*. at ¶ 19, Canal had accepted Cardinal Transport's defense pursuant to a reservation of its rights with regard to the application of its policy's exclusion for movement of property by mechanical device, *id*. at ¶ 8. According to its counterclaim, Canal notified Cardinal Transport of James River's request to control the *Edwards* defense in April 2016, at the time James River made the request, and Cardinal Transport did not object, either then or later. *Id*. at ¶ 17, 20. By letter on October 5, 2017, Canal informed Cardinal Transport and James River that it had determined that its policy did not provide coverage, citing the same exclusion. *Id*. at ¶ 18. Following the *Edwards* judgment, Cardinal did not make any demand upon Canal to pay defense or indemnity costs. *Id*. at ¶ 26. Prior to filing this action, James River did not request that Canal pay or contribute to the costs of its retained defense counsel, and James River did not assert to Cardinal Transport or Canal that James River's policy was excess to Canal's. *Id*. at 27-28.

For its affirmative defenses, Canal asserts that James River waived its right to recover against Canal; that, as a result, James River is estopped from asserting any right to recovery against Canal; and that James River's claims are barred by the doctrines of unclean hands and laches. Def.'s Answer & Affirmative Defenses 18-19. In the counterclaim, Canal seeks a declaratory judgment that James River has waived and/or is estopped from asserting that Canal breached its duty to defend Cardinal Transport, and that Canal actually owed no duty to defend Cardinal Transport in *Edwards* or to indemnify it against the resulting judgment. Countercl. 7.

This matter comes before the Court on Canal's partial motion to dismiss James River's second amended complaint and James River's motion to dismiss Canal's counterclaim. ECF Nos. 42, 47. The Court previously granted Canal's motion to dismiss James River's earlier, amended complaint without prejudice on procedural grounds (James River's claim was not ripe), with leave to refile. *James River Ins. Co. v. Canal Ins. Co.* ("*James River I*"), 534 F. Supp. 3d 962 (N.D. Ill. 2021). The earlier complaint only asserted estoppel and contractual subrogation theories, which are reasserted as Counts I-II in the operative complaint. The Court explained in *James River I* that those theories are viable, aside from the now-resolved ripeness issue. *Id*. at 970-73. The operative complaint adds Counts III-VI, which are (unsurprisingly, given *James River I*) the only counts that Canal seeks to dismiss. Canal argues that these counts should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For its part, James River has moved to dismiss Canal's counterclaim for a declaratory judgment pursuant to Rule 12(b)(6) and Rule 12(f). James River argues that the counterclaim is untimely as a matter of law, so should be dismissed pursuant to Rule 12(b)(6). In addition, James River argues that Canal's counterclaim simply repackages Canal's affirmative defenses, so it should be dismissed pursuant to Rule 12(f), which authorizes courts to strike "any redundant . . . matter."

The Court starts with Canal's partial motion to dismiss. In their briefing, the parties dispute the viability of James River's equitable subrogation, equitable contribution, common law bad faith, and Section 155 theories. The Court does not address these arguments, as Rule 12(b)(6) authorizes only the dismissal of claims, not legal theories. To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Crop. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Here, James River alleges a single claim based on Canal's failure to defend and indemnify Cardinal Transport in *Edwards*. James River's second amended complaint asserts multiple legal theories, but "[o]ne claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal citation omitted) (quoting *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011)). Canal does not dispute the viability of James River's estoppel and contractual subrogation theories. Those theories are sufficient to support a plausible claim. Therefore, the Court need not address the viability of James River's other theories at the motion-to-dismiss stage.

Turning to James River's motion to dismiss Canal's counterclaim for declaratory judgment, James River argues that a declaratory judgment action filed after the underlying action is resolved is untimely as a matter of law. *See* Pl.'s Mot. Dismiss Countercl. 2-4. To support this argument, James River cites *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999). James River relies on the following holding: "[w]here an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law." *Id*. at 1138. As James River would apply this holding, it forecloses any post-trial declaratory judgment action regarding an insurer's duties to defend and indemnify. Pl.'s Mot. Dismiss Countercl. 3. In advancing that argument, however, James River reads this holding too broadly. To explain, the Court starts with an overview of the duties to defend and indemnify and the estoppel doctrine, all of which are implicated.

As the Court explained in its prior opinion in this case, "[i]n Illinois, an insurer's duty to defend its insured is broader than its duty to indemnify." *James River I*, 534 F. Supp. at 970 (quoting *Nat'l Am. Ins. Co. v. Progressive Corp.*, 43 F. Supp. 3d 873, 879 (N.D. Ill. 2014), *aff'd sub nom. Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717 (7th Cir. 2015)). The insurer's duty to defend is determined by comparing the complaint in the underlying action to the policy terms (with doubts resolved against the insurer); this is the so-called "eight corners rule." By contrast, the insurer's duty to indemnify is determined by the facts as they are developed in the underlying litigation. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)); *Amerisure Mutual Insurance Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010) (citing *State Farm Fire and Casualty Co. v. Perez*, 899 N.E.2d 1231, 1235 (Ill. 2008)). The eight corners rule requires an insurer to defend an action when the insurer has the potential obligation to indemnify, based on the allegations in the complaint, "even though it *may not* ultimately be obligated to indemnify the insured." *Zurich Ins. Co. v. Raymer Indus., Inc.*, 514 N.E.2d 150, 163 (Ill. 1987).

3

The estoppel doctrine applies "where an insurer has breached its duty to defend." *Emps. Ins. of Wausau*, 708 N.E.2d at 1135. An insurer found to have breached its duty to defend "is estopped from later raising policy defenses to coverage." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 335 (Ill. 1991). To avoid potential application of the estoppel doctrine (that is to say, to avoid application of the estoppel doctrine in the event it is determined to have breached the duty to defend), an "insurer must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage." *Id.*

This verbatim language is often used in Illinois law to describe the estoppel doctrine (why the Court cites it here). Importantly, however, this language should not be misinterpreted to mean that, so long as an insurer seeks a declaratory judgment action regarding its duties to defend and indemnify (at any point), the estoppel doctrine cannot apply. Rather, "the insurer must file the declaratory judgment action in a ***timely*** manner" (and if it is adjudicated a duty to defend, defend) to avoid application of the estoppel doctrine." *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 986 (Ill. App. Ct. 2d Dist. 2006) (emphasis added) (adopting a "reasonable time" standard).

The timeliness requirement makes sense, of course. The "purpose of the declaratory judgment action [is] 'to settle actual controversies before they have ripened into violations of law or legal duty or breach of contractual obligations.'" *Waste Mgmt.*, 579 N.E.2d at 334 (quoting *Heinson v. Porter*, 772 P.2d 778, 782 (Kan. 1989)). In this context, through a declaratory judgment action regarding its duty to defend, the insurer can learn whether it has a duty to defend before it abandons its insured. If the insured waits to file a declaratory judgment action until it has already breached its duty to defend, that purpose cannot be served. In addition, "[t]he estoppel doctrine is meant to enforce the duty to defend," so allowing the insurer to escape the application of the estoppel doctrine with a late-filed declaratory judgment action would "contravene this goal." *State Auto.*, 846 N.E.2d at 987.

*Employers Insurance of Wausau* concerned the obligations of an insurer, Wausau, which received notice of a suit and a request for defense from its insured but did not provide a defense (it "did nothing other than request information from" its insured). 708 N.E.2d at 1127, 1138. Almost four months after the underlying action was resolved by a settlement, Wausau filed a complaint seeking a declaratory judgment of noncoverage.[1] *Id.* The trial court found that Wausau had a duty to defend and breached that duty by refusing to defend, so the estoppel doctrine applied; the insurer was therefore precluded from asserting a policy defense of late notice. *Id.* at 1134. On appeal in the Illinois Supreme Court, Wausau argued that the estoppel doctrine could not apply because Wausau had filed a declaratory judgment action. *Id.* at 1138. The Illinois Supreme Court rejected Wausau's argument, holding that "Wausau's declaratory judgment action was untimely as a matter of law." *Id.* at 1138.

---

[1] Canal seeks to distinguish *Employers Insurance of Wausau* on the grounds that it involved an action brought by an insurer against its insured, whereas the action before this Court is an inter-insurer action. Def.'s Resp. Br. Opp. Mot. Dismiss Countercl. 3-4. However, Canal is wrong about the context for *Employers Insurance of Wausau*: Wausau brought the declaratory judgment at issue against an excess insurer of its insured, as well as a liquidation trust created to resolve its insured's liabilities, and the trust's trustee. *See* 708 N.E.2d at 1125.

James River's reliance on *Employers Insurance of Wausau* is nevertheless too complete. The case, to be sure, supports the proposition that Canal's counterclaim for a declaratory judgment is untimely, but only for the purpose of avoiding application of the estoppel doctrine. The factual allegations in Canal's counterclaim still relate to and may be considered in connection with, other viable defenses. For instance, Canal may still argue that it did not breach its duty to defend, so the doctrine of estoppel does not apply. "The doctrine of estoppel arises only where a duty to defend exists and has been breached by the insurer. It does not prevent the insurer from raising the issue of whether it did in fact breach a duty to defend its insured." *JG Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 578 N.E.2d 1259, 1262 (Ill. App. Ct. 1st Dist. 1991). In addition, because the issue of whether Canal breached its duty to defend Cardinal Transport is disputed, Canal's policy defenses also remain viable at this stage. *See Bedoya v. Illinois Founders Ins. Co.*, 688 N.E.2d 757, 763 (Ill. App. Ct. 1st Dist. 1997) ("[W]hen there is no duty to defend, an insurer cannot be estopped from denying coverage."). Accordingly, the Court concludes that *Employers Insurance of Wausau* and related cases do not establish that Canal's counterclaim is untimely as a matter of law.

The final issue is whether the counterclaim should be dismissed as redundant. The Court agrees with James River that Canal's affirmative defenses and the counterclaim overlap. However, they are not entirely duplicative; the counterclaim includes additional allegations and new exhibits. More importantly, James River does not allege that it would suffer any prejudice from having to respond to Canal's counterclaim. The counterclaim raises issues that are central to this case and striking it would not remove those issues or save the parties time or money. Therefore, Rule 12(f) dismissal is unwarranted. *See Bank of Am., N.A. v. Chicago Title Ins. Co.*, No. 17 C 0407, 2017 WL 2215012, at *9 (N.D. Ill. May 18, 2017) (declining to dismiss in the same context).

For the foregoing reasons, the Court denies Canal's motion to strike Counts III-VI of the second amended complaint and James River's motion to strike the counterclaim.

Dated: March 30, 2024

_____
John J. Tharp, Jr.
United States District Judge